IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NEIL M. GRIZZELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:09-cv-1141 ) |
| CYBER CITY TELESERVICES MARKETING, INC., | ) Judge Thomas A. Wiseman, Jr. ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Neil M. Grizzell brings this action against defendant Cyber City Teleservices Marketing, Inc. ("CCTM") asserting a claim of disability discrimination in violation of the Americans with Disabilities Act ("ADA"), as well as a state-law claim for breach of an employment agreement. Now before the Court is CCTM's Motion to Dismiss (Doc. No. 23) in which the defendant seeks judgment in its favor on two legal issues: (1) that this Court lacks personal jurisdiction over out-of-state defendant CCTM and (2) that Grizzell failed to sufficiently plead a claim of disability discrimination under the ADA. Grizzell has filed a Response in opposition to the motion, as well as a Motion for Leave to Amend Complaint (Doc. No. 26) and proposed Amended Complaint. CCTM filed a consolidated reply brief and response in opposition to the motion to amend the complaint, asserting that the proposed amendment is futile because it does not address the purported pleading deficiencies.[1]

For the reasons set forth below, the Court finds that CCTM is subject to personal jurisdiction in Tennessee, and that the plaintiff has sufficiently pleaded a disability discrimination claim under the ADA to survive a 12(b)(6) motion to dismiss. CCTM's motion will therefore be denied. Grizzell's motion to amend his complaint will be granted.

---

[1] The proposed Amended Complaint varies substantively from the original in only a few ways. The proposed Amended Complaint (1) explicitly alleges damages in excess of $75,000 resulting from breach of the employment contract, and includes diversity jurisdiction arising from the state-law breach of contract claim as an alternative basis for the exercise of jurisdiction; and (2) includes the word "mistaken" in paragraphs 15 and 21, pertaining to the defendant's perception of the plaintiff as disabled.

## I. FACTUAL BACKGROUND

This case arises out CCTM's termination of the employment contract between Grizzell and CCTM. According to the allegations in the original Complaint, Grizzell was hired by CCTM, a New Jersey corporation, on February 26, 2009 as Managing Director of Business Development, Financial Services Practice. (Compl. ¶¶ 2, 10.) As prescribed by Grizzell's employment contract, he attended job training and orientation in the Philippines in April 2009. (Compl. ¶ 12; Pl.'s Ex. C.) During his stay in the Philippines, Grizzell witnessed the death of a young girl approximately the same age as his daughter. (*Id.*) This event traumatized Grizzell, who had previously been diagnosed with post-traumatic stress disorder ("PTSD"). (*Id.*) On multiple occasions in June and July 2009, Grizzell informed his supervisor, CCTM employee Fred Shadding, that he suffered from PTSD. (Compl. ¶ 13.) Grizzell also informed Mr. Shadding that he believed he might need treatment for his PTSD. (Compl. ¶ 14.) CCTM allegedly refused to accommodate Grizzell so that he might seek additional treatment for PTSD. (Compl. ¶ 20.) Grizzell alleges that, on August 11, 2009, CCTM discharged Grizzell due to his psychological disability or his employer's perception of his psychological disability. (Compl. ¶ 15.)[2]

Grizzell filed a charge of discrimination against CCTM with the United States Equal Employment Opportunity Commission ("the EEOC") on September 4, 2009, alleging that CCTM unlawfully discriminated against him on the basis of his disability in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("the ADA"). (Compl. ¶ 4; Pl.'s Ex. A.) On November 23, 2009, the EEOC issued notice of Grizzell's right to sue CCTM under the ADA. (Compl. ¶ 5; Pl.'s Ex. B.) This action was filed shortly thereafter, on December 2, 2009, well within the statute of limitations.

## II. PERSONAL JURISDICTION

### A. Standard of Review

CCTM seeks to dismiss Grizzell's complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. In the context of a motion that contests personal jurisdiction, the burden lies with the plaintiff to establish that jurisdiction exists. *Air Products & Controls, Inc. v. Safetech Int'l., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). In responding to a motion to dismiss for lack of

---

[2] As indicated in note 1, above, paragraph 15 of the proposed Amended Complaint refers to the employer's "mistaken perception."

jurisdiction, the plaintiff must not merely rely upon the pleadings, but instead must present specific facts, by affidavit or other means, showing that the court may exercise jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Absent an evidentiary hearing,[3] however, the plaintiff's burden is "relatively slight" and the courts consider the pleadings and affidavits in the light most favorable to the plaintiff. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (citing *Welsh v. Gibbons*, 631 F.2d 436, 438–39 (6th Cir. 1980), *cert. denied,* 450 U.S. 981 (1981)). To defeat a motion to dismiss, a plaintiff need only make a *prima facie* case, based upon *all* the specific facts alleged, that personal jurisdiction exists. *Id.* at 1168–69; *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996).

### B. Personal-Jurisdiction Standard

In claims brought under the federal-question doctrine, personal jurisdiction over a nonresident exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bridgeport Music, Inc. v. Still N The Water Publ'g., Inc.*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). Tennessee's long-arm statute has been interpreted to extend jurisdiction of courts within the state to the maximum limit allowed under the Due Process Clause. *Cupp v. Alberto-Culver USA, Inc.*, 308 F. Supp. 2d 873, 877 (W.D. Tenn. 2004) (citing Tenn. Code Ann. § 20-2-214(a)(6)). Therefore, for personal jurisdiction to apply, a defendant must have "minimum contacts" with a forum state so that "traditional notions of fair play and substantial justice" are not offended. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Additionally, personal jurisdiction may be "either general or specific in nature, depending on the nature of the [defendant's] contacts in a given case." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)). While Grizzell has not expressly conceded that the Court lacks general jurisdiction over CCTM, he has premised his *prima facie* case of personal jurisdiction on specific jurisdiction. The Court will therefore focus on whether it may exercise specific jurisdiction over CCTM.

---

[3] In the case at bar, an evidentiary hearing is unnecessary because CCTM has not disputed the operative facts regarding *in personam* jurisdiction in either its initial motion to dismiss or any subsequent affidavits or reply briefs submitted to this Court. *See Theunissen*, 935 F.2d at 1458 (holding that "[the court] may conduct an evidentiary hearing to resolve any apparent factual questions") (internal citation omitted).

The court may properly exercise specific jurisdiction over a foreign defendant if the claims asserted by a plaintiff arise from or are related to the defendant's contacts with the forum state. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The Sixth Circuit has adopted a three-part test to determine whether specific jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1. "Purposeful Availment"

The first factor from the *Mohasco* case is "purposeful availment." As CCTM points out in its motion to dismiss, purposeful availment is "the *sine qua non* for *in personam* jurisdiction." (Doc. No. 24, at 5 (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998).) Purposeful availment exists where the defendant's contacts "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzeqicz*, 471 U.S. 462, 475 (1985) (emphasis in original). "When a defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there," the "purposeful availment" requirement is satisfied. *Id.* at 474–75 (internal quotations and citation omitted).

The Sixth Circuit has further described this requirement as "something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (internal quotations and citation omitted). This requirement serves to "ensure that defendants will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475. A key element of the purposeful-availment inquiry is whether the defendant has made "some overt actions connecting the defendant with the forum state." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998). Additionally, the Supreme Court has held that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their actions." *Id.* at 462.

In the instant case, CCTM's actions constitute purposeful availment for the purposes of Grizzell's claim. According to Grizzell's allegations, Grizzell received payment in Tennessee bi-weekly from the company via overnight delivery or regular mail, and he regularly participated in conference calls and received e-mail and instant messages often originating from out-of-state CCTM employees. Additionally, CCTM entered into an "employment covenants" agreement and an employment contract with Grizzell, the former of which contained a forum selection and choice of law clause that indicated all disputes would be settled under Tennessee law in Tennessee courts. Perhaps most compelling is the fact that two CCTM representatives, Fred Shadding and Ken Malek, came to Tennessee to terminate Grizzell's employment with the company. (Aff. of N. Grizzell ¶ 11.).) While each of the above factors standing alone might be insufficient for a finding of purposeful availment, under the totality of the circumstances, these factors together indicate CCTM purposefully directed activities and contractual obligations regarding Grizzell's employment in Tennessee, and that it "purposefully availed" itself of the privilege of causing a consequence in this state. Grizzell filed suit after allegedly being unlawfully discriminated against in violation of the ADA when he was fired. It is due to CCTM's actions within the forum – in particular, terminating Grizzell's employment – that this action arises. The operative facts of this case make it distinguishable from the cases upon which CCTM relies in arguing that the purposeful-availment factor is not met.

### *2. "Arising from"*

The second *Mohasco* factor requires that a plaintiff's claim "arise from the [defendant's] contacts with the [forum state]." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)). The claim need not "formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Mohasco*, 401 F.2d at 384 n.27).

The causes of action asserted in this case arise from Grizzell's employment relationship with CCTM and, more particularly, from the termination of that employment relationship. The ADA and breach

of contract claims clearly have a substantial connection with CCTM's activities within the state. In particular, as detailed above, Grizzell filed this lawsuit after representatives of CCTM, Fred Shadding and Ken Malek, came to Tennessee and terminated Grizzell's employment with the company. Grizzell claims that the act of firing him constituted the adverse employment action upon which his disability-discrimination claim is dependent, and breached the terms of his employment agreement. The "arising from" factor is also satisfied.

### 3. "Reasonableness"

The third factor from *Mohasco* requires that subjecting a defendant to personal jurisdiction be reasonable under the specific facts of the case. However, where the first two requirements are met, courts generally find that the exercise of jurisdiction would be reasonable. *See CompuServe*, 89 F.3d at 1268 (stating that "if we find, as we do, the first two elements of a *prima facie* case – purposeful availment and a cause of action arising from the defendant's contacts with the forum state – then an inference arises that this third factor is also present"). Other considerations relevant to the question of reasonableness include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

Admittedly, CCTM will face a burden in defending a lawsuit in Tennessee. However, Tennessee also has a strong interest in protecting disabled residents from unlawful employment discrimination. Certainly Grizzell has a very strong interest in obtaining relief, and there is no other state that has an interest in his welfare. These considerations, in conjunction with the finding that the first two requirements are met, indicate that exercise of personal jurisdiction of CCTM is reasonable.

In sum, for all of the reasons discussed above, the Court finds that CCTM is subject to personal jurisdiction in Tennessee. The defendant's motion to dismiss for lack of personal jurisdiction will therefore be denied.

## III. THE SUFFICIENCY OF THE PLEADING

### A. Standard of Review

In addition to its 12(b)(2) motion, CCTM seeks to dismiss Grizzell's claim for failing to plead facts sufficiently plausible to state a claim under the ADA. In a motion to dismiss under Rule 12(b)(6), the facts

must be construed in the light most favorable to the plaintiff, and the court accepts all factual allegations as true. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Additionally, the plaintiff's alleged facts must present a "plausible" claim, not one that is merely conceivable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In *Twombly*, the Supreme Court attempted to address an ambiguity left from the case of *Swierkiewicz v. Sorema N.A.*, in which the Court had been called upon to consider "whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (internal citations and punctuation omitted). The *C*ourt held in *Swierkiewicz* that "an employment discrimination complaint need not include such facts and instead must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Thus, the *C*ourt further held that the lower court had improperly dismissed a complaint that "detailed the events leading to [the plaintiff's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* at 514. In *Twombly*, the Supreme Court purported to reconfirm that the "use of a heightened pleading standard was contrary to the Federal Rules' structure of liberal pleading requirements[,]" and that a plaintiff needed to plead "only enough facts to state a claim to relief that is plausible on its face[.]" *Twombly*, 550 U.S. at 570.

However, the Court also noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545. Additionally, a complaint must state a "plausible claim" to survive a motion to dismiss, and the determination of whether the plausibility threshold has been met will be a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949–50 (2009). The complaint must contain facts that imply "more than the mere possibility of misconduct." *Id.* In *Iqbal*, the Supreme Court made it clear that the standard articulated in *Twombly* applies to "all civil actions," including discrimination suits. *Id.*

B.  **Stating a Claim under the ADA**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a *prima facie* case under the ADA a plaintiff must demonstrate (1) that he is an individual with a disability, (2) who was, with or without reasonable accommodation, otherwise qualified to perform his job's requirements, and (3) who was discriminated against solely because of the disability or perceived disability.  *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).  As stated above, a plaintiff alleging employment discrimination is not *required* to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss.  *Swierkiewicz*, 534 U.S. at 510–11.  However, this Court has previously recognized that "it seems reasonable to conclude that a complaint that pleads facts in support [of] each element of a *prima facie* case of discrimination . . . necessarily meets *Iqbal*'s requirement that the complaint show more than the 'mere possibility of misconduct[.]'"  *Orozco v. City of Murfreesboro*, No. 09-00752, 2009 WL 4042586, at *3 (M.D. Tenn. Nov. 19, 2009).

In the present case, Grizzell specifically makes the following allegations:

(1)  He has a history and diagnosis of PTSD.

(2) He was employed from February 26, 2009 through his termination on August 11, 2009 as Managing Director Business Development, Financial Services Practice for CCTM, and all times during that period performed his job duties to the defendant's satisfaction.

(3) After repeatedly reporting to his supervisor, Fred Shadding, that he had been diagnosed with PTSD and thought he needed to seek additional treatment, CCTM by and through its agents refused to accommodate Grizzell's request to seek treatment.

(4)  On or about August 11, 2009, representatives from CCTM – Fred Shadding and  Ken Malek – traveled to Tennessee and fired Grizzell due to his reported disability or, in the alternative, CCTM's (mistaken) perception of his disability.[4]

(*See* Compl. ¶¶ 10–23.)

The Court finds that, based on these allegations, Grizzell has pleaded facts that satisfy a *prima facie* case for unlawful disability discrimination:  (1) He has a diagnosis of PTSD, from which an inference can be made that this condition inhibits his ability to do a broad range of jobs or that his employer

---

[4] The proposed Amended Complaint asserts that Grizzell was fired due to CCTM's "mistaken" perception of his disability.

perceived it as interfering with his ability to do a broad range of jobs, and therefore that he is an individual with a disability; (2) he alleges he performed satisfactory work and remains able to perform as an employee of CCTM with his requested reasonable accommodation of treatment for his PTSD; and (3) he was fired from his position after telling his employer about his condition and indicating that he thought he needed additional treatment, from which an inference can be made that CCTM would not accommodate a request for treatment. Although Grizzell does not explicitly allege that he requested and was denied an accommodation, an inference can be made from the facts as alleged that such a request, if expressly made, would have been denied. The complaint contains more than mere "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

In support of its motion to dismiss, CCTM relies upon a case from the Middle District of Tennessee, *Campbell v. Prometheus Labs., Inc.*, No. 07-0558, 2008 WL 237723 (M.D. Tenn. Jan. 28, 2008), in which Judge Echols dismissed a plaintiff's disability-discrimination claims for failing to sufficiently plead facts that would justify relief. There, the court held that in ruling upon a defendant's motion to dismiss, it is a threshold question as to whether the plaintiff is an individual with a disability within the meaning of the ADA. *Id.* at *3. In that case, the court determined that the plaintiff was not an individual with a disability because she had failed to plead facts showing that she could not perform a major life activity, such as caring for herself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working. *Id.* (citing 29 C.F.R. § 1630.2(i); *Workman v. Frito Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999)). Moreover, the plaintiff there had a condition (epilepsy) that did not qualify as a disability under the circumstances. *Id.* at *4. The court also held that the plaintiff could not proceed on the "regarded as" theory of recovery under the ADA. *Id.* at *5. In order to proceed under the "regarded as" theory, a plaintiff may allege either: (1) that the employer was under the mistaken belief that she was disabled, when in fact she was not; or (2) that the plaintiff actually has an impairment, the employer knows about it, and the employer mistakenly believes that the plaintiff is disabled because of an impairment when in fact he is not. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). In *Campbell*, the court held that the plaintiff had failed to allege facts that would support this theory primarily because the "regarded as" theory requires the employer maintain some *mistaken* perception about the employee and/or his impairment.

Here, Grizzell has asserted that he has PTSD and needed the opportunity to seek treatment. The facts as alleged give rise to a reasonable inference, which must be construed in Grizzell's favor, that CCTM perceived the PTSD diagnosis as a condition that interfered with Grizzell's ability to work. Grizzell specifically asserts that CCTM "refused to make a reasonable accommodation to enable Plaintiff to receive treatment for post traumatic stress disorder, and instead terminated [him]." (Compl. ¶ 20.) The allegations also give rise to a reasonable inference that Grizzell would have been capable of doing the work with a reasonable accommodation (i.e. treatment for PTSD). In short, the facts of this case are distinguishable from those of *Campbell*; Grizzell has adequately pleaded facts that, if proven, would permit a jury to conclude either that he was disabled or mistakenly perceived as disabled, and suffered discrimination as a result. Grizzell has pleaded facts that show "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009). The defendant's motion to dismiss for failure to state a claim will be denied.

## IV. THE MOTION TO AMEND

CCTM has not shown that Grizzell's proposed amendment to his complaint would be futile. Nor has there has been a showing of undue delay, repeated failure to cure, a lack of notice to the defendant, or the possibility of undue prejudice. *Cf. Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). The motion for leave to amend the Complaint will therefore be granted.

## V. CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss will be denied and the plaintiff's motion to amend his complaint will be granted. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge